UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**OVEDA M. WHEDBEE,**

   **Plaintiff,**

v.                    **Case No: 6:17-cv-1695-Orl-37DCI**

**UNITED OF OMAHA LIFE
INSURANCE COMPANY,**

   **Defendant.**

**REPORT AND RECOMMENDATION**

  This cause comes before the Court for consideration without oral argument on the following motion:

> **MOTION:**  **MOTION TO REMAND (Doc. 13)**
>
> **FILED:**   October 20, 2017
>
> ---
>
> **THEREON** it is **RECOMMENDED** that the motion be **GRANTED**.

  On August 24, 2017, in the Circuit Court for the Seventh Judicial Circuit in and for Volusia County, Florida, Plaintiff filed a one-count Complaint alleging that Defendant breached a contract of insurance. Doc. 2.[1] In the first paragraph of that Complaint, Plaintiff alleged that: "This is not an ERISA case pursuant to <u>David Gunn v. United of Omaha Life Insurance Company</u>, US District Court Middle District of Florida Orlando Division, Case No. 6:13-cv-1731-Orl-36TBS (copy of Order is attached as Exhibit "A")." Doc. 2 at 1. Although it was not specifically alleged in the

---

[1] It appears undisputed that Defendant was served with the Complaint on August 31, 2017. *See* Docs. 1; 13.

Complaint, it appears undisputed that Defendant issued Plaintiff a Group Long Term Disability Insurance contract as part of an employee benefit plan in relation to Plaintiff's employment with Halifax Staffing, Inc. (Staffing), through which Plaintiff worked at Halifax Hospital Medical Center. (Halifax). *See* Docs. 13 at 1-2; 15 at 1-3.

On September 28, 2017, Defendant removed this case to this Court. Doc. 1. The sole basis for removal was the assertion that: "Because this action involves a claim to recover benefits and to enforce rights under an employee welfare benefit plan, it is governed by ERISA." *Id*. at 2. Thus, Defendant asserted that the Court has "concurrent original jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1)." *Id*. Describing *Gunn v. United of Omaha Life Ins. Co.*, No. 6:13-CV-1731-ORL-36, 2014 WL 2506135, at *1 (M.D. Fla. May 22, 2014), in the Notice of Removal as "a comparable earlier case," Defendant – to its credit – made no effort to distinguish this case from *Gunn*; stating instead that it "respectfully disagree[d] with the decision set forth in *Gunn*." Doc. 1 at 3. Indeed, in *Gunn*, United States District Judge Charlene E. Honeywell, in a *de novo* review of United States Magistrate Judge Thomas B. Smith's objected-to Report and Recommendation, considered the exact issue presented in this case and – like Judge Smith – determined that remand was appropriate. *See* 2014 WL 2506135. Like this case, *Gunn* involved the alleged breach of a long term disability policy issued by Defendant as a part of an employee benefit plan to an employee of Staffing working at Halifax. *Id*. By removing this case, Defendant simply seeks to re-litigate the exact same issue it did in *Gunn*, hoping for a different result.

Predictably, on October 20, 2017, Plaintiff moved for remand. Doc. 13. Plaintiff's core contention is that the "Policy at issue is a governmental plan established or maintained by [Staffing], which is an agency or instrumentality of [Halifax], a political subdivision of the State

of Florida." *Id*. at 2.  In response, Defendant maintained that Plaintiff's claim is preempted completely by ERISA and, as such, remand is not appropriate.  Doc. 15 at 1.

A defendant may remove any civil action from state to federal court over which the federal court has original jurisdiction. 28 U.S.C. § 1441(a).  "The existence of federal jurisdiction is tested at the time of removal." *Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1294-95 (11th Cir. 2008).  "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."  28 U.S.C. § 1447(c).  "A removing defendant bears the burden of proving proper federal jurisdiction." *Leonard v. Enter. Rent a Car*, 279 F.3d 967, 972 (11th Cir. 2002).

The issue before the Court is extremely limited.  There is no question that governmental plans are exempt from ERISA pursuant to 29 U.S.C. § 1003(b)(1).  Docs. 13 at 5; 15 at 9.  ERISA defines a "governmental plan" as a "plan established or maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing."  29 U.S.C. § 1002(32).  As the parties both recognize, "unfortunately," ERISA does not define the terms "political subdivision," "agency," or "instrumentality," and the Eleventh Circuit has not adopted a test for determining if a government affiliated entity qualifies as a political subdivision, agency, or instrumentality of the state.  Docs. 13 at 5; 15 at 10.  Thus, the question before the Court is whether Staffing is an "agency or instrumentality" of "the government of any State or political subdivision thereto," for the purposes of ERISA's "government plan exemption."  Docs. 13 at 8; 15 at 10.  If it is, this case should be remanded.

In answering that question, Plaintiff and Defendant urge the Court to adopt tests from different Circuits.  Plaintiff urges the Court to apply the test articulated by the Second Circuit in

*Rose v. Long Island R. Pension Plan*, 828 F.2d 910 (2d Cir. 1987). Defendant asserts that the better-reasoned and more appropriate test is that articulated in *Alley v. Resolution Trust Corp.*, 984 F.2d 1201 (D.C. Cir. 1993). As the parties agree, the Eleventh Circuit has neither articulated its own test nor adopted one of the foregoing tests to answer the question of whether an entity is an "agency or instrumentality" of "the government of any State or political subdivision thereto," for the purposes of ERISA's "government plan exemption."

In *Gunn*, Judge Honeywell adopted the test articulated in *Rose* to determine that Staffing is an instrumentality of a political subdivision of the State of Florida (i.e., Halifax) and, thus, that the long term disability insurance contract issued by Defendant fell within ERISA's government plan exemption. *See* 2014 WL 2506135. Thus, Judge Honeywell remanded the case. *Id*. As discussed in *Gunn*, the *Rose* test incorporated the six factors from Internal Revenue Service Revenue Ruling 57-128:

> In cases involving the status of an organization as an instrumentality of one of more states or political subdivisions, the following factors are taken into consideration: (1) whether it is used for a governmental purpose and performs a governmental function; (2) whether performance of its function is on behalf of one or more states or political subdivisions; (3) whether there are any private interests involved, or whether the states or political subdivisions involved have the powers and interests of an owner; (4) whether control and supervision of the organization is vested in public authority or authorities; (5) if express or implied statutory or other authority is necessary for the creation and/or use of such an instrumentality, and whether such authority exists; and (6) the degree of financial autonomy and the source of its operating expenses.

*Rose*, 828 F.2d at 918 (quoting Rev. Rul. 57-128, 1957-1 C.B. 311 (1957)). After weighing the alternative tests, Judge Smith chose the *Rose* test and applied the *Rose* factors as follows:

> When applying the *Rose* test, the first factor to consider is whether Staffing is used for a governmental purpose and performs a governmental function. Staffing does not provide any service that Halifax Hospital is not capable of providing. Its sole purpose and function is to move the people who would otherwise be employed by Halifax Hospital out of the Florida Retirement System and into a self-funded retirement plan. Nothing in the record suggests that the public benefits in any way

> from this arrangement, or that it has anything to do with Halifax Hospital's contribution to the public good. Accordingly, I find no governmental purpose or function in this arrangement.
>
> The second and third factors weigh in favor of finding the Policy exempt. The performance of Staffing's function is exclusively on behalf of Halifax Hospital, a political subdivision of the state of Florida. And, there is no private interest involved in Staffing. It is wholly owned and controlled by Halifax Hospital which enjoys all of the powers and interests that come with ownership the corporation. The fourth factor considers whether control and supervision of Staffing is vested in public authority or authorities. I find that it is. Staffing's affairs are conducted by a Board of Directors comprised of the District Commissioners. The Commissioners are appointed by, responsible to, and serve at the pleasure of the Governor.
>
> Fifth, express or implied statutory authority was necessary for Halifax Hospital to create Staffing. According to the Florida Attorney General, that statutory authority exists pursuant to Florida laws Ch.79–577, amended in 1984 to grant Halifax Hospital the authority to establish corporations, and amended again in 1991 to provide that Halifax Hospital may form a not-for-profit corporation which may engage in non-healthcare related activities. (Doc. 23–3).
>
> Finally, the Court must determine the degree of Staffing's financial autonomy and the source of its operating expenses. Staffing has no separate, independent financial autonomy. It is totally dependent upon Halifax Hospital to supply the money it requires to operate. (Doc. 19 ¶ 13).
>
> In sum, all but the first of the *Rose* factors support a finding that Staffing is an agency or instrumentality of Halifax Hospital. Thus, the overwhelming weight of the factors supports, and I find, that Staffing comes within the governmental plan exemption to ERISA. Consequently, this Court lacks subject matter jurisdiction over this case.

*Gunn v. United of Omaha Life Ins. Co.*, No. 6:13-CV-1731-ORL-36, 2014 WL 2505793, at *7–8 (M.D. Fla. Apr. 16, 2014), *report and recommendation adopted*, No. 6:13-CV-1731-ORL-36, 2014 WL 2506135 (M.D. Fla. May 22, 2014).

In ultimately remanding, Judge Honeywell addressed the objections of Defendant (identified as "Omaha" in the order) to Judge Smith's Report and Recommendation, which objections mirror many of the arguments Defendant now makes:

> In its Objections, Omaha argues that the Magistrate Judge adopted the wrong test for determining whether Staffing is an agency or instrumentality of a political

subdivision and that the Alley test is the more appropriate test for ERISA purposes. Doc. 25 at 2. Specifically, Omaha argues that the *Rose* test is inappropriate because it relies on an IRS revenue ruling that, according to Omaha, "is a tax-oriented analysis to determine whether for purposes of tax-exemption rules, a particular entity performs a genuine government function." *Id*. at 3. Because ERISA is "a statute meant to regulate the relations between private employees and employers with respect to welfare benefits and pensions," Omaha reasons, the *Alley* test, which focuses on the relationship between the entity and its employees, is more appropriate for assessing whether ERISA "should govern the benefit plan established or maintained by a particular entity." *Id*. at 3–4. However, since the IRS is charged with administering ERISA, the Second Circuit in Rose gave deference to the IRS' definition of the terms "agency" and "instrumentality," and this Court agrees. *Id*. at 10. Indeed, the terms "agency" and "instrumentality" under 26 U.S.C. § 414(d) were added to the Internal Revenue Code by Title II of ERISA. *Rose*, 828 F.2d at 918.

The Magistrate Judge adopted the *Rose* test after weighing all other alternatives and concluding that *Alley* was never intended to be applied to entities affiliated with state governments, which implicated federalism concerns. Doc. 24 at 12–13. One reason for the exemptions was to protect state authority over relations with state employees. *Id*. at 12. Thus, the *Alley* court noted that the *Rose* test would be the more appropriate test where state entities were involved. *Id*. The *Alley* case involved a federal entity. Recently, the Third Circuit agreed, as well as District Courts in Louisiana and Rhode Island. *See Koval v. Washington Cnty. Redevelopment Auth.*, 574 F.3d 238, 241–42 (3d Cir.2009); *Smith v. Culpepper v. Protective Life Ins. Co.*, 944 F.Supp.2d [sic] *Caranci v. Blue Cross & Blue Shield of Rhode Island*, 194 F.R.D. 27, 35 (D.R.I.2000). Thus, Omaha's focus on the *Alley* court's reasoning for why its test is the better one falls flat, as the *Alley* court, itself, stated that its reasoning would not apply where state court entities were involved. *See generally* Doc. 25 at 4.

Omaha contends that, under the *Rose* test, however, a state entity could evade ERISA by creating a state-controlled entity but which evades state pension rules and programs for its employees. Doc. 25 at 6. Omaha also argues that this test is inapplicable because Staffing's employees are not state employees, pointing out that the sole purpose of Staffing was to allow Halifax to move its employees from the Florida Retirement System into a self-funded private retirement program. According to Omaha, this evidences an intent to deprive Staffing's employees of access to the kind of government-backed retirement plan exempt from ERISA coverage. *Id*. at 7–8. Since Staffing does not itself have the power to levy taxes, Omaha avers, Staffing's employees run the risk of being underfunded, which was the whole purpose of having ERISA protection in the first place as well as the purpose for excluding governmental plans from ERISA protection. *Id*. at 8–9, 11; *see, e.g. McGraw v. Prudential Ins. Co. of Am.*, 137 F.3d 1253, 1257, 1276 (10th Cir.1998).

Indeed, Congress had several reasons for exempting governmental plans. Governmental plans were considered to be more generous in their vesting provisions, a government's ability to tax was considered an adequate substitute for the minimum funding standards and termination insurance provided by ERISA, there was concern that the imposition of minimal funding requirements and other restrictions would impose unacceptable costs on governmental entities, and there were federalism concerns. *Rose*, 828 F.2d at 914. Specifically, the governmental plan exemption was meant to apply to agencies and instrumentalities of government where the employees were not government employees themselves. Congress, in allowing the ERISA exemption, wanted to preserve the diversity in vesting and funding provisions of the plans provided by state and local governmental entities and wanted states to pursue a wide variety of employee benefit plans, not just those administered by the states themselves. There is no indication that Congress intended all governmental plan employees to be required to participate in a state-run retirement plan, as opposed to a state-funded private plan. Congress did not want to unduly burden or interfere with plans provided by state and local governmental entities, and the *Rose* test appropriately accounts for those federalism concerns. Doc. 26 at 2–3; *Rose*, 828 F.2d at 914 ("[t]here are ... thousands of public employee retirement systems operated by towns, counties, authorities and cities in addition to the state and Federal plans. Eligibility, vesting, and funding provisions are at least as diverse as those in the private sector ...."). Thus, the fact that Staffing was created to move Halifax Hospital's employees out of the state retirement system is irrelevant here. In fact, none of the cases cited by the parties in this matter involved plans that covered people who were directly employed by the government.

Additionally, there are many similarities between the *Rose* case and this matter. There, the Long Island Rail Road ("LIRR") was owned by the Metropolitan Transportation Authority ("MTA"), which was deemed a governmental entity, and the LIRR's members were the same as the members of the MTA. *Id*. at 916–17. And because the LIRR was receiving massive operating subsidies from the state, the court found that the LIRR employees could depend on the state's taxing power to protect their right to retirement income. *Id*. at 918. The court also rejected the plaintiff's objection that the state was not obligated to continue funding the railroad, observing that many governmental services are funded in the same way. *Id*. Finally, the court noted that the state had demonstrated a commitment to sustain the railroad. *Id*.

Here, Staffing is similarly intertwined with a governmental entity and dependent on funding from Halifax. However, Halifax's ability to tax allays Omaha's concerns that Staffing's employee benefit plans may be underfunded. *See Caranci v. Blue Cross & Blue Shield*, 194 F.R.D. 27, 35 (D.R.I.2000) (finding that "it is clear that a plan is protected from underfunding if the entity in question can rely on the government's taxing power to generate funds, even if it lacks that power itself."). Although Halifax is not legally obligated to continue to fund Staffing, Staffing's board of directors are comprised of the same board of directors of Halifax and Halifax is Staffing's sole member. As such, Halifax has a vested interest in

sustaining Staffing. Additionally, as the Rose court noted, this nonmandatory funding obligation is no different from the way many other governmental services are funded. Finally, because Staffing is so intertwined with Halifax, federalism concerns and Congress' desire not to interfere with state authority over state plans and benefits is implicated here.

Omaha also contends that the Magistrate Judge failed to reconcile his decision with other cases which found that the exemption for government plans did not apply in similar situations: *Hamilton v. Hartford Life & Acc. Ins.*, 2007 WL 1839780 (D.Ariz. June 26, 2007) (Private, nonprofit corporation established to staff state university hospital was not a governmental entity because it was not a creature of an enabling statute and "does not have governmental powers such as taxation or eminent domain."); *Nebraska Medical Center v. Payne*, 2008 WL 4661473 (D.Neb. Oct.20, 2008) (hospital health plan was not exempt from ERISA as government plan where nonprofit corporation was not created by statute, its employees were not governed by any governmental merit system, and entity had no power of taxation or eminent domain "or other powers reserved for sovereign entities"); *NLRB v. Parents & Friends of the Specialized Living Center*, 879 F.2d 1442 (7th Cir.1989) (employees of not-for-profit Illinois corporation which operated state-built, licensed, and regulated intermediate care facility could not claim government exemption from NLRB's jurisdiction). However, the cases Omaha cites which have declined to apply the Rose test are distinguishable because they dealt with entities that were less entwined with state government. Doc. 26 at 3. For instance, in *Hamilton*, the entity at issue was not created by a government entity. It was run by a private board of directors, none of whom were appointed by any government official or entity, and it had complete control over its budget. Similarly, the entity at issue in Nebraska was established by private individuals as a nonprofit corporation, and it was not controlled by any government entity or officials. Last, NLRB dealt with National Labor Relations Board ("NLRB") jurisdiction, and was not an ERISA claim. Moreover, the entity at issue there was a nonprofit corporation that was not created by the state, and the state did not exercise substantial control over that entity. In sum, due to federalism concerns, the *Alley* test was never intended to be used in cases involving state-affiliated entities as Halifax is in this case. Therefore, the Court, as did the Magistrate Judge, declines to adopt that test.

Finally, Omaha argues that even if the *Rose* test is the correct test to apply, the Magistrate Judge applied it incorrectly. Doc. 25 at 3 n. 3. Specifically, Omaha points out that Magistrate Judge Smith found that the first factor under the Rose test—the purpose factor—was not met because Staffing does not serve any legitimate governmental purpose. *Id*. An entity that serves no legitimate government purpose cannot be treated as a government entity, Omaha reasons. *Id*. On that basis, Omaha avers that the Magistrate Judge's conclusion should be rejected. *Id*. Omaha has provided no authority or basis for its argument here. On the contrary, no one factor under the six-factor test in *Rose* has been said to be dispositive or to carry a greater weight than the other factors. Here, Magistrate Judge Smith found that the other five factors weighed in favor of a finding that

> Staffing is an agency or instrumentality of Halifax, with only one factor weighing against this conclusion. Clearly, these findings support the Magistrate Judge's legal conclusion.

2014 WL 2506135, at *2–5.

The undersigned finds persuasive Judge Honeywell's reasoning in *Gunn* and sees no reason to recommend a departure from that decision. *See id*. Similarly, the undersigned finds persuasive Judge Smith's application of the *Rose* factors in his underlying Report and Recommendation. *See also United States v. Halifax Hosp. Med. Ctr.*, No. 6:09-CV-1002-ORL-31, 2014 WL 68603, at *1 (M.D. Fla. Jan. 8, 2014) ("Halifax Hospital is a special taxing district that operates a community hospital of the same name in Volusia County, Florida. Halifax Staffing is an instrumentality of Halifax Hospital. Halifax Staffing employs the individuals who work for Halifax Hospital. Halifax Hospital pays all of the expenses and obligations of Halifax Staffing, including payroll, either directly or by transfer of funds into Halifax Staffing's payroll account.").

Further, the parties point to no intervening authority since the decision in *Gunn* that would cast doubt on the reasoning therein. *See generally* Docs. 13; 15. In fact, in its response to the motion to remand, Defendant cites to only one case decided since *Gunn*, and that case is cited for the proposition that perhaps the Court should adopt a modified *Rose* test, if it adopts the *Rose* test. *See* Doc. 15 at 17 n.7. In relation to that argument, Defendant notes that the IRS Revenue Ruling 57-128, the Revenue Ruling cited to by the *Rose* court, was "altered" following the *Rose* decision, by IRS Revenue Ruling 89-49. Doc. 15 at 16-17; *see* Rev. Rul. 89-49, 1989-1 C.B. 117 (1989). Revenue Ruling 89-49 reads as follows:

> A plan will not be considered a governmental plan merely because the sponsoring organization has a relationship with a governmental unit or some quasi-governmental power. One of the most important factors to be considered in determining whether an organization is an agency or instrumentality of the United States or any state or political subdivision is the degree of control that the federal or state government has over the organization's everyday operations. Other factors

> include: (1) whether there is specific legislation creating the organization; (2) the source of funds for the organization; (3) the manner in which the organization's trustees or operating board are selected; and (4) whether the applicable governmental unit considers the employees of the organization to be employees of the applicable governmental unit. Although all of the above factors are considered in determining whether an organization is an agency of a government, the mere satisfaction of one or all of the factors is not necessarily determinative.

Rev. Rul. 89-49, 1989-1 C.B. 117 (1989).

In *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 419 (5th Cir. 2016), the post-*Gunn* case cited to by Defendant, the Fifth Circuit affirmed the district court's use of the *Rose* test, which the Court deemed the Revenue Ruling test:

> We conclude that the Revenue Ruling test, as refined by Revenue Ruling 89-49, strikes the appropriate balancing among concerns in determining whether a plan is a governmental plan. We agree with the district court that the Revenue Ruling 57-128 factors overall weigh in favor of Defendants.

827 F.3d at 420. The *Smith* court weighed the factors in Revenue Ruling 57-128, just as the Court did in *Gunn*, but then also considered the factors in Revenue Ruling 89-49: "The most notable difference between Revenue Ruling 89-49 and Revenue Ruling 57-128 for our purposes is that Revenue Ruling 89-49 asks if the governmental entity treats the employees of the organization as public employees." *Id*. The court in *Smith* went on explain that by taking into consideration Revenue Ruling 89-49, the court would be addressing the concerns expressed by the *Alley* court:

> Revenue Ruling 89–49 thus incorporates the concern expressed by *Alley*—the employment relationship—but does not make it dispositive or even predominant. It thereby addresses the concerns espoused by Plaintiffs in this case—that they were treated as private employees and not entitled to benefits afforded to public employees.

*Id*. at 419-20 (footnote omitted). Thus, the Court evaluated the six factors set forth in Revenue Ruling 57-128 and then determined that, even also taking into consideration Revenue Ruling 89-49, the agency at issue in that case should be considered a "governmental entity" under ERISA. 827 F.3d at 420.

Of course, Revenue Ruling 89-49 existed at the time of the decision in *Gunn*.[2] And several courts, like the court in *Gunn*, have followed *Rose* and applied the six factors from Revenue Ruling 57-128 since Revenue Ruling 89-49 was published in 1989. *See, e.g.*, *Lewis v. Blue Cross Blue Shield of Georgia*, 2015 WL 1475610, at *6 (M.D. Ala. Mar. 31, 2015); *Yu v. New York City Hous. Dev. Corp. (HDC)*, 2011 WL 2326892, at *24 (S.D.N.Y. Mar. 16, 2011), *report and recommendation adopted sub nom.* As further support to the continuing validity of Revenue Ruling 57-128, it is worth noting that, since the publication of Revenue Ruling 89-49, the United States Tax Court has continued to cite with approval to Revenue Ruling 57-128. *See Uniband, Inc. v. C.I.R.*, 140 T.C. 230, 249 (2013) (published Tax Court Opinion citing to Revenue Ruling 57-128). In addition to the United States Tax Court, the IRS itself continues to cite with approval to Revenue Ruling 57-128. *See, e.g.*, I.R.S. P.L.R. 201720001 (May 19, 2017) (IRS Private Letter Ruling using Revenue Ruling 57-128, and not 89-49, in analyzing the question of whether a taxpayer is an instrumentality); IRS CCA 201519027 (May 8, 2015) (IRS Chief Counsel Advisory doing the same). Thus, this Court certainly may, and in the undersigned's opinion should, continue to follow the test exactly as articulated by *Rose*. Such a decision would be in line with decisions by other district courts, the United States Tax Court, and the agency promulgating the opinion at issue, i.e. the IRS.

Further, the weakness in following the portion of the decision in *Smith* that goes beyond *Rose* and looks to the latter Revenue Ruling (i.e., 89-49), is that doing so creates uncertainty in the law and potentially leaves the well-reasoned judicial test articulated in *Rose* open to the vagaries

---

[2] While the court in *Gunn* did not mention Revenue Ruling 57-128 or Revenue Ruling 89-49 by name or citation, the court did note that: "The *Rose* test uses six factors to make this determination, which are the same six factors used by the Internal Revenue Service ('IRS') in interpreting 'agency' and 'instrumentality.'" *Gunn*, 2014 WL 2506135, at *2.

of individual, later Revenue Rulings.  "A 'Revenue Ruling' is an official interpretation by the [IRS] that has been published in the Internal Revenue Bulletin.  Revenue Rulings are issued only by the National Office and are published for the information and guidance of taxpayers, Internal Revenue Service officials, and others concerned." *Taproot Admin. Servs., Inc. v. C.I.R.*, 133 T.C. 202, 208-10 (2009), *aff'd*, 679 F.3d 1109 (9th Cir. 2012).  The United States Tax Court has described its limited use of Revenue Rulings as follows:

> We are not bound by revenue rulings, and, applying the standard enunciated by the Supreme Court in *Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944), the weight (if any) that we afford them depends upon their persuasiveness and the consistency of the Commissioner's position over time. See *PSB Holdings, Inc. v. Commissioner,* 129 T.C. 131, 142, 2007 WL 3225191 (2007) ("[W]e evaluate the revenue ruling under the less deferential standard enunciated in *Skidmore v. Swift & Co.,* 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944)"). The Statement of Procedural Rules acknowledges the meaningful distinction to be drawn between regulations and revenue rulings. *See* sec. 601.601(d)(2)(v)(*d* ), statement of procedural rules ("revenue rulings published in the Bulletin do not have the force and effect of Treasury Department Regulations (including Treasury decisions), but are published to provide precedents to be used in the disposition of other cases, and may be cited and relied upon for that purpose.").

*Id.*  Indeed, Revenue Rulings, in and of themselves, have no particular precedential value before the Tax Court.  *See, e.g.*, *Estate of Lang v. Commissioner,* 64 T.C. 404, 406-07 (1975) ("A revenue ruling, without more, of course, is simply the contention of one of the parties to the litigation, and is entitled to no greater weight."), *affd. in part and revd. in part on other grounds* 613 F.2d 770 (9th Cir.1980)).

Thus, from time to time, the National Office of the IRS may issue Revenue Rulings on the topic that is under consideration here.  Those new Revenue Rulings may have inconsistencies and a topically-related Revenue Ruling may fail entirely to mention the existence of a prior Revenue Ruling – just as Revenue Ruling 89-49 lacks any mention or citation to Revenue Ruling 57-128.  Defendant argues that the test in *Rose* is "outdated" because it relies upon Revenue Ruling 57-128.

If the Court followed that line of reasoning, then the test to determine whether an entity is an instrumentality of a governmental entity would potentially change every time the IRS National Office issued another Revenue Ruling on the topic. And this is not a hypothetical concern given the history of the Revenue Rulings at issue here. Further, the IRS has issued Notice 2015-7, which stated the agency's intention to issue regulations directly addressing the issues raised in Revenue Rulings 89-49 and 57-128.[3] Perhaps, once – or if – those regulations are properly promulgated

---

[3] IRS Notice 2015-7 provides the following introduction to the proposed regulations:

> Currently, there are no regulations interpreting § 414(d) of the Code. Neither § 414(d) of the Code nor ERISA define key terms relating to governmental plans, including the terms "established and maintained," ""political subdivision," "agency," and "instrumentality." Revenue Ruling 89-49, 1989-1 C.B. 117, provides guidance for determining whether a retirement plan maintained by an organization is a governmental plan within the meaning of § 414(d). The revenue ruling lists several factors for determining whether a sponsoring organization or participating employer is an agency or instrumentality of the United States or any State or political subdivision of a State. The factors in Rev. Rul. 89 49 are similar to the factors listed in Rev. Rul. 57 128, 1957-1 CB 31, which provides guidance on whether an entity is an instrumentality that is wholly-owned by one or more States or political subdivisions of a State for purposes of the exemption from employment taxes under §§ 3121(b)(7) and 3306(c)(7) of the Code.
>
> \*\*\*
>
> On November 8, 2011, the IRS and Treasury Department published an Advance Notice of Proposed Rulemaking (ANPRM) (REG-157714-06), relating to the definition of a governmental plan under § 414(d) of the Code, in the Federal Register (76 FR 69172) (§ 414(d) ANPRM). The § 414(d) ANPRM describes guidance under consideration that would set forth rules relating to the determination of whether a retirement plan is a governmental plan within the meaning of § 414(d). The guidance under consideration would define key terms relating to governmental plans, including "established and maintained," "political subdivision," and "agency or instrumentality."
>
> For purposes of determining whether an entity is an agency or instrumentality of the United States or an agency or instrumentality of a State or political subdivision of a State, the guidance under consideration described in the § 414(d) ANPRM would provide a facts and circumstances analysis. The factors used in this analysis are drawn from the factors historically used in governmental plan determinations, including the factors set forth in Rev. Ruls. 57-128 and 89-49, as well as court decisions. The factors described in the anticipated guidance described in the § 414(d) ANPRM include whether the entity's

into law, courts should revisit the test at hand. But until that time, the undersigned recommends that the Court continue to follow the test set forth in *Rose*, and the decision in *Gunn*. *See Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999) ("all doubts about jurisdiction should be resolved in favor of remand to state court.").

Accordingly, it is respectfully **RECOMMENDED** that:

1. The motion to remand (Doc. 13) be **GRANTED**;

2. That this case be **REMANDED**; and

3. That the Clerk be directed to close the case.

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on December 12, 2017.

DANIEL C. IRICK
UNITES STATES MAGISTRATE JUDGE

---

governing board or body is controlled by a State or political subdivision; whether the members of the entity's governing board or body are publicly nominated and elected; the extent to which a State has financial responsibility for the general debts and other liabilities of entity; and the extent to which the entity is delegated, pursuant to statute, the authority to exercise sovereign powers.

Relief for Certain Participants in 414(d) Governmental Plans, 2015-6 I.R.B. 585 (2015).

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy